UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TRACY ALLEN,                                                    23 cv 2375 (CS)

                        Plaintiff,

        -against-

ROBERTO PADILLA,

                        Defendant.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff*
1 Railroad Avenue, Suite 3
Goshen, New York 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]

Dated: June 10, 2024

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ......................................................................................1

STANDARD OF REVIEW .....................................................................................3

ARGUMENT ...........................................................................................................5

    Point I

    Plaintiff easily establishes a prima facie case of discrimination..........................5

    Point II

    A reasonable jury could find that defendant's asserted legitimate reason for his hiring decision is a pretextual mask of unlawful discrimination...................................6

    A.  Applying "but for" causality does not aid defendant.................................9

    B.  A reasonable jury could find that plaintiff's qualifications were superior to Carolan's and that, when viewed as part of the totality of the evidence, defendant's pretext is a mask for unlawful discrimination..........................11

    C.  The same actor principle is not dispositive..............................................14

    D.  A reasonable jury could reject defendant's other arguments.....................16

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abrams v. Dep't. of Pub. Safety,*
   764 F.3d 244 (2d Cir. 2014) ........................................................................................12

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................................................................3

*Barella v. Vill. of Freeport,*
   16 F.Supp3d 144 (E.D.N.Y. 2014) ..............................................................................11

*Brown v. Baldwin Union Free Sch. Dist.,*
   603 F.Supp.2d 509 (E.D.N.Y. 2009) ...........................................................................15

*Buon v. Spindler,*
   65 F.4th 64 (2d Cir. 2023) ......................................................................................4, 19

*Byrne v. Town of Cromwell Bd. of Educ.,*
   243 F.3d 93 (2d Cir. 2001) .....................................................................................5, 12

*Carlton v. Mystic Transp., Inc.,*
   202 F.3d 129 (2d Cir. 2000) ..........................................................................................5

*Collins v. Connecticut Job Corps,*
   684 F.Supp.2d, 232 (D.Conn. 2010)............................................................................15

*Copeland v. Rosen,*
   38 F.Supp.2d 298 (S.D.N.Y. 1999) .......................................................................14, 15

*Danzer v. Norden Systems, Inc.,*
   151 F.3d 50 (2d Cir. 1998) ............................................................................................3

*Gallo v. Prudential Residential Services,*
   22 F.3d 1219 (2d Cir. 1994) ......................................................................................7, 8

*Grady v. Affiliated Cent., Inc.,*
   130 F.3d 553 (2d Cir. 1997) ....................................................................................14, 15

*Heinemann v. Howe & Rusling,*
   529 F.Supp.2d 396 (W.D.N.Y. 2008)......................................................................14, 15

*Holcomb v. Iona College,*
   521 F.3d 130 (2d Cir. 2008) ..........................................................................................3

*Jain v. Tokio Marine Mgmt.*,
    2018 U.S. Dist. LEXIS 166692 (S.D.N.Y. Sept. 27, 2018)...............................................12

*Johnson v. Zema Systems Corp.*,
    170 F.3d 734 (7th Cir. 1999) ............................................................................................14

*Kwan v. Andalex Grp., LLC*,
    737 F.3d 834 (2d Cir. 2013) ...........................................................................................10

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ..........................................................................................4, 5

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...........................................................................................................4

*Naumovski v. Norris*,
    934 F.3d 200 (2d Cir. 2019) ..........................................................................................9, 10

*Pignato v. American Trans. Air, Inc.*,
    14 F.3d 342 (7th Cir. 1994) .............................................................................................19

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000).........................................................................................4, 7, 10, 11

*Salazar v. Ferrara Bros. Bldg. Materials Corp.*,
    2015 WL 1535698 (S.D.N.Y. Apr. 6, 2015) ....................................................................15

*Sklaver v. Casso-Solar Corp.*,
    2004 WL 1381264 (S.D.N.Y. May 15, 2004) .................................................................15

*Vega v. Hempstead U.F.S.D.*,
    801 F.3d 72 (2d Cir. 2015) ...............................................................................................4

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*,
    429 U.S. 252 (1977)........................................................................................................18

*Walsh v. N.Y. City Hous. Auth.*,
    828 F.3d 79 (2d Cir. 2016) .........................................................................................12, 14

*Zimmermann v. Assoc. First Capital Corp.*,
    251 F.3d 376 (2d Cir. 2001) ..............................................................................................5

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a) ............................................................................................................3

## PRELIMINARY STATEMENT

Following discovery, defendant has filed a motion for summary judgment. As plaintiff makes out a *prima facie* case and demonstrates that a reasonable jury could reject the allegedly neutral reasons defendant has adduced for his adverse decision as false and conclude, instead, that defendant deviated from procedural and substantive norms in taking his adverse action, the motion is due to be denied.

## STATEMENT OF FACTS

While the facts are set forth in plaintiff's reply to defendant's Rule 56.1 statement, the following is a summary:

As School Superintendent of the Newburgh Enlarged City School District, in late 2020, defendant was responsible for recommending a Library Director III. The school district created a search committee, which interviewed candidates and ultimately identified two finalists, plaintiff, an African American, and Mary Lou Carolan, who is Caucasian.

Plaintiff was a more highly experienced librarian than Mary Lou Carolan, the Caucasian candidate, having served in a very similar library in the Hudson Valley city of Spring Valley, and then as a head librarian for a major department at RPI. On the other hand, Ms. Carolan served as Library Director I at two small more rural libraries and as Assistant Director for two years at the Newburgh Library.

While in the last position, Carolan elicited strong criticism from a large number of employees, who accused her of creating a toxic work environment and causing the early departure of several of their colleagues. During this selection process, eighteen employees submitted a petition to defendant Padilla, who claims he asked Michael McLymore, the district's Assistant Superintendent for Human Resources, to investigate the allegations in the petition. McLymore

1

denied any knowledge of the document until after the Superintendent selected Carolan for the position and did no investigation of the claims advanced by library employees.

At his deposition, defendant gave contradictory accounts of the selection process. He claimed that, when presented with the two finalists, he racked his brain as between them before discussing with McLymore the notion that he would make both co-directors. According to this account of events, he asked McLymore to speak with both Carolan and Allen to ascertain their willingness to act as co-directors. McLymore reported that Carolan was open to the idea and that plaintiff was hostile toward it. When he himself then heard the same resistance from plaintiff, he offered Carolan the position.

The other inconsistent version is that, after reviewing both candidates, defendant told McLymore to offer the position to plaintiff. McLymore did so, plaintiff accepted the offer and was given a firm start date. In reliance on this offer, plaintiff quit her job, did not extend her lease in upstate New York and, at Mr. McLymore's instance, prepared to hastily move with her family to Newburgh to promptly commence her employment on January 4, 2021.

Then, sometime after December 10, 2020, the date her Personnel Change Report [which is only filled out and entered into the district's financial management system when a prospective employee accepts an offer] bears, Padilla decided he wanted to split the directorship and offer both candidates the position. At defendant Padilla's instance, McLymore re-contacted plaintiff, who expressed reservations about the new notion, but eventually told him that, if the Superintendent wished to so proceed, she would assent.

Padilla then called plaintiff himself and queried her concerning his proposal. When she expressed concern both about the concept and about working with Carolan, who she knew had alienated a substantial portion of the library's staff, Dr. Padilla responded with hostility and

2

"revoked" the offer he had earlier instructed McLymore to make to her and directed the hiring of Carolan, the Caucasian candidate.

Defendant Padilla never took any steps to create a co-directorship. Ms. Carolan remained director for a couple of years before leaving the position. In the meantime, plaintiff was stranded, having given notice to the college at which she had directed a major library, and forced to take an inferior position at Thrall Library in Middletown, NY.

## STANDARD OF REVIEW

Summary judgment is appropriate only where the moving party establishes there is no genuine dispute as to any material fact, entitling it to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if its resolution could affect the outcome of the suit and a dispute is genuine if reasonable minds may differ on its resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a reasonable jury could return a verdict for the non-moving party, then summary judgment is inappropriate and the court must deny the motion. *See Id.* at 250.

The court must view the record in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in [its] favor." *See Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). Its function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." *Id.* at 255. And "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998).

Critically, the court should review the record as a whole and, in doing so, "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). As such, "the court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*

## ARGUMENT

"The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, provides public employees with the right to be free from discrimination." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quotations & citations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). "A state employee acting in his official capacity is acting under color of state law." *Id.* (quoting *Vega v. Hempstead U.F.S.D.*, 801 F.3d 72, 88 (2d Cir. 2015) (internal quotation marks and citation omitted)). "Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (quotation & citation omitted).

Like a Title VII claim, a Section 1983 discrimination claim is analyzed "under the familiar three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). "First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate,

nondiscriminatory reason for the disparate treatment.  If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." *Id.* at 78-79 (quotations & citations omitted) (cleaned up).

<u>Point I</u>

**Plaintiff easily establishes a prima facie case of discrimination.**

Plaintiff establishes a *prima facie* case of race discrimination: she is African American, applied for and was qualified for the position, and was ultimately denied the position, defendant hiring a Caucasian instead.

Defendant first contends that plaintiff cannot establish the fourth prong of her *prima face* case because she cannot demonstrate that her "qualifications for the position are so superior to the candidate actually selected, that no reasonable person could have chosen the selected candidate." *See* Def. Mem. of L. at 6.  But this argument is misplaced, as the standard defendant cites applies not the *prima facie* stage of the *McDonnell Douglas* test, but rather the pretext stage. *See Byrne v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102-03 (2d Cir. 2001).  Indeed, at the *prima facie* stage, the fact that a person outside of plaintiff's protected category was chosen for the job is sufficient to establish the fourth prong. *See Id.*; *Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).  As it is undisputed that defendant ultimately hired Carolan, who is Caucasian, instead of her, plaintiff has satisfied her "*de minimis*" burden in establishing her prima facie case. *See Zimmermann*, 251 F.3d at 381.  Plaintiff addresses defendant's "qualifications" argument in Point II below in addressing the issue of pretext.

For the same reason, defendant's "same actor" defense fails to defeat plaintiff's *prima facie* case. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135-36, 137-38 (2d Cir. 2000) (addressing

5

same actor defense after already finding that plaintiff established a prima facie case).  As such, plaintiff addresses defendant's same actor defense in Point II below.

## Point II

**A reasonable jury could find that defendant's asserted legitimate reason for his hiring decision is a pretextual mask of unlawful discrimination.**

Defendant claims that he had a neutral non-discriminatory reason for rejecting plaintiff, her hostile response to his idea to create a co-directorship: but, a reasonable jury could find this reasoning entirely pretextual and conclude that Dr. Padilla never had any intent to create a co-directorship and, rather, he used this rationale as a pretext to revoke the offer to plaintiff and extend an offer to Carolan, a less qualified candidate who faced strong internal opposition from the very library staff she was being asked to lead.

To the extent Dr. Padilla claims that Ms. Allen's lukewarm response to his suggested co-directorship informed his decision to discard her candidacy, a reasonable jury could conclude that Dr. Padilla had no real interest in creating a co-directorship, took no steps to pursue this idea and used it as a pretext to move Ms. Allen out of the way in support of a candidate who lacked her background and faced strong internal opposition.  Moreover, a reasonable jury could conclude that plaintiff was understandably upset when McLymore and Padilla broached the co-directorship position because the district had posted a Library Director III position, she had applied for and been offered that position, had quit her job based on that offer and was in the process of readying her family to move when, for nebulous reasons, McLymore and then Padilla queried her with regard to a co-directorship.

Neither man had any details on the structure of the new position or the salary it carried. Indeed, there was no such position, and plaintiff knew of no workable precedent for such a model

in a relatively small library.  Moreover, when Padilla queried her about the idea, he seemed unreceptive to her input and ideas, though he asked her them in the first place.  Moreover, plaintiff knew that Carolan had very hostile relationships with a significant number of library staff and did not deem it feasible to begin her own professional relationship with staff as a co-director with the discredited Carolan.

Here, applying *Reeves*, *supra*, no jury is compelled to believe defendant's inconsistent explanations of events.  At deposition, he claims that, when faced with the two finalists, he "racked his brains out" trying to decide between then before coming up with the co-director idea.  But this chronology is inconsistent with Padilla having determined, as McLymore testified he did, that plaintiff was the finalist, meaning the superior candidate and, on that basis, directing the Asisstant Superintendent for Human Resources to offer Allen the job [which she then accepted].  Padilla does not explain why he so directed McLymore [and he never denies he did this] if, in fact, he viewed the candidates as equal and wanted to create a co-directorship.  And, if he did view plaintiff as superior, as may be inferred from the fact that he offered her the job first, what prompted him [upon her acceptance of it] then to continue racking his brains before rescinding his offer to her when she raised questions about his admittedly novel approach?

To the extent Padilla claims that plaintiff rejected his structure, she denies this, creating a question of material fact which a jury must resolve.  To the extent he claims that plaintiff's "hostile attitude" informed his decision, she denies this and claims he was abrupt and insulting during their call, again creating an issue of material fact, which the court cannot resolve.

In *Gallo v. Prudential Residential Services*, the Court of Appeals wrote as follows:

> Considering how often we must reverse a grant of summary judgment, the rules for when this provisional remedy may be used apparently need to be repeated.  First, summary judgment may not be granted unless the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

Fifth, when deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

22 F.3d 1219, 1224-25 (2d Cir. 1994) (quotations & citations omitted).

These sage principles apply to this case: Padilla's intent is squarely at issue: why did he revoke the job offer he directed McLymore to make? He had before him the qualifications of both candidates when he made the initial decision to offer plaintiff the position. At deposition, he strongly suggested that he never made the initial offer, though a jury could categorically reject that, rather floating his co-directorship position when faced with making a choice between the candidates and then preferring Carolan based on her more positive response to his idea. However, this makes little sense because if he preferred Allen [and his offer of the job to her, not Carolan, suggests he understood her superior qualifications] and no co-directorship was going to be

implemented anyway [and there is no evidence of any effort to identify another candidate, re-post the position or take any other such measure], then why not simply hire Allen?

Did Padilla disfavor Allen because, as a Black woman, she stood up to him and questioned his proposed structure? Did this alienate him and cause him to reject the candidate his own actions suggest was more qualified? And why did Padilla claim at deposition that he received the petition from 18 current Library employees and that he had McLymore investigate when McLymore categorically denied that he received this document before the selection or any request from the Sueprintendent to investigate. Applying neutral principles, why would a decision-maker not value the opinions of nearly twenty current library employees and select the candidate provoking their rancor when he had a willing and highly qualified candidate who he initially offered the position? Faced with these issues, a reasonable jury could conclude that Padilla is not credible, that his attributions of selfless, non-discriminatory motives cannot be believed, and that his explanations are highly pretextual, masking discrimination.

## A. Applying "but for" causality does not aid defendant.

Defendant notes the holding in *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) that "a plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment. It is insufficient to establish simply that invidious discrimination was 'a motivating factor' of the offending conduct. Accordingly, a court considering a § 1983 claim at summary judgment must determine whether, construing the evidence in a light most favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred 'but-for' sex discrimination."

Put another way, the Second Circuit wrote in *Naumovski*, "In the third step of the *McDonnell Douglas* analysis, a plaintiff asserting a § 1983 claim bears a higher burden in establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is 'pretextual.' To establish 'pretext' under Title VII, a plaintiff need only establish 'that discrimination played a role in an adverse employment decision.' In other words, 'a Title VII plaintiff need only prove that the employer's stated non-discriminatory reason was not the exclusive reason for the adverse employment action. By contrast, to establish 'pretext' under § 1983, a plaintiff must establish that the employer's stated reason would not, alone, constitute a sufficient basis for pursuing an adverse action. In other words, a § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." *Id.* at 214-15.

That said, "'but-for' causation does not require proof that [discrimination] was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Kwan v. Andalex Grp.*, LLC., 737 F.3d 834, 846 (2d Cir. 2013). Indeed, "a plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability" and "[r]equiring proof that a prohibited consideration was a 'but-for' cause of an adverse action does not equate to a burden to show that such consideration was the 'sole' cause. *Id.* n. 5.

As applied here, plaintiff must show that a reasonable jury could find Padilla's claim that he disfavored her because he wished to create a co-directorship was either "false" or "inadequate to support" failing to hire her, the adverse action. Nothing about this analysis alters the salient principle, set forth in *Reeves*, that, in adjudicating a motion for summary judgment, the court must reject each and every assertion of "fact" which a jury is not required to accept. This court must

10

review the record as a whole and, in doing so, "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). As such, "the court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*

Here, a reasonable jury could find that defendant had no genuine interest in creating a co-directorship of the library and took absolutely no action to realize or implement that objective after nixing plaintiff's candidacy because she raised issues with the idea and with the viability of collaborating with a person who had already alienated many library employees. A reasonable jury could see Padilla's invocation of this reason as pretextual precisely because he raised it after offering plaintiff the position [which calls into question his claim that he did so after racking his brains on how to deal with these two qualified persons] and because he never took a single measure to implement his great idea.

**B. A reasonable jury could find that plaintiff's qualifications were superior to Carolan's and that, when viewed as part of the totality of the evidence, defendant's pretext is a mask for unlawful discrimination.**

As noted above, defendant contends plaintiff's qualifications were not so superior to Carolan's that no reasonable jury could find that discrimination was not afoot. But this argument is misplaced and unavailing.

"[W]here a plaintiff opposes summary judgment *solely* on the basis that there is a discrepancy in the qualifications of the two candidates, 'the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Barella v. Vill. of Freeport*, 16 F.Supp3d 144, 166 (E.D.N.Y. 2014) ( (quoting

11

*Byrnie*, 243 F.3d at 103) (emphasis added)). But this standard does *not* apply where a case is about more than a mere discrepancy in qualifications." *Jain v. Tokio Marine Mgmt.*, No. 16-cv-8104, 2018 U.S. Dist. LEXIS 166692, at *18 (S.D.N.Y. Sept. 27, 2018) (quoting *Abrams v. Dep't. of Pub. Safety*, 764 F.3d 244, 253-54 (2d Cir. 2014)) (emphasis in original); *See also Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 79, 78 (2d Cir. 2016). And, in such a case, even if the discrepancy in qualifications would not on its own raise an issue of fact if that were the only basis upon which the plaintiff relied, such a discrepancy is not stripped of all probative value and, when viewed with other evidence of discrimination, must be considered as part of the totality of the circumstances, which, as a whole, may raise an issue of fact. *See Walsh*, 828 F.3d at 78.

Here, the case is not solely about plaintiff's qualifications as compared to Carolan's – indeed, defendant has not asserted as his purported non-discriminatory reason that he chose Carolan over plaintiff solely because of her superior qualifications, and plaintiff points to her own superior qualifications as only one piece of a larger picture, which includes (1) Padilla's contradictory accounts of the decision-making process, (2) McLymore's denial that Padilla directed to investigate the petitioner submitted against, which undermines Padilla's credibility, (3) plaintiff's denial that she manifested a hostile attitude when Padilla proposed the co-directorship to her, further undermining his credibility and reflecting a his racial stereotyping of her as an "angry Black woman", and (4) the fact that, after claiming to prefer a co-directorship at the library, Padilla ultimately abandoned that model and hired only Carolan, even though plaintiff indicated she would accept he co-directorship if that was the only opportunity.

In light of the foregoing evidence of pretext, a reasonable jury could also consider plaintiff's superior qualifications as compared to Carolan as another piece of probative evidence of discrimination. Indeed, Padilla initially chose plaintiff for the Library Director, and a reasonable

jury could understand that he understood that she was by far the better, more qualified candidate for the position. And the record supports this: plaintiff had served successfully as a library director III at the Finklestein Library in Spring Valley, a city the size of Newburgh with a similarly diverse population. From there, she worked at another large library before taking a director's position at a prestigious university library. She had no adverse marks on her record. In comparison, the Caucasian candidate who defendant initially disfavored had worked at two small libraries in Director I positions, the lowest civil service ranking associated with library directors in NY, and then as an Assistant Director in the Newburgh Free Library where, at the very least, she had indisputably alienated 18 current employees who accused her of creating a toxic work environment.

Given the foregoing, a reasonable jury might view defendant's own initial selection as supporting this conclusion that plaintiff was better qualified and could well be confused by any assertion that Carolan was better qualified for the position in light of his own initial choice.

Moreover, a jury could find additional reason to doubt that Padilla really racked his brains at all – he admitted speaking to no references about the candidates, to having spoken with none of the current library employees about Carolan and had a passing, chance meeting with the latter candidate in the middle of a hallway to discuss his co-directorship idea. And though defendant claims he asked his Assistant Superintendent of Human Resources to review this complaint, in fact, Mr. McLymore denies any such request and claims that he never even knew about the petition until after this selection process. A reasonable jury could find that defendant received this petition and buried it, never seriously considering the significant allegations therein.

In short, a reasonable jury could find that plaintiff was in fact better qualified than Carolona and that, when viewed against the totality of the record, her superior qualifications, even if

insufficient on their own to carry the day, contribute to raising an issue of question of fact as to discriminatory intent. *See Walsh*, 828 F.3d at 78.

### C. The same actor principle is not dispositive.

The premise underlying the "same actor" inference is that a person who truly harbors discriminatory animus is unlikely to have hired the plaintiff in the first instance, and so the inference of discrimination is diminished if the same person made the decision to hire and fire. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553 (2d Cir. 1997). Notwithstanding this rationale, it is equally clear that this "is not a necessary inference, it is only a plausible one, and decisions in this Circuit addressing it have warned that its use is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand." *Copeland v. Rosen*, 38 F.Supp.2d 298, 305 (S.D.N.Y. 1999).

Indeed, "[t]here are a variety of plausible explanations of such 'hire-fire' conduct that may support an inference of discriminatory animus." *See Id.* at 305. For instance, a supervisor could develop discriminatory animus after hiring the plaintiff and might also "purposefully hire members of a protected class and then fire them in the hope that the act of hiring will be the focus of attention and will allay any suspicions about other discriminatory acts." *Id.* Further, a supervisor might hire a protected class member "to assuage his . . . guilt . . . only later to find himself . . . overcome again by animus." *See Id.* A supervisor might also hire the person expecting him to conform to a certain stereotype or to submit to discriminatory treatment and then fire that person when the expectation is not met. *See Heinemann v. Howe & Rusling*, 529 F.Supp.2d 396, 412 (W.D.N.Y. 2008) (citing *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir. 1999)).

Thus, Courts have repeatedly rejected the contention that the "inference mandates, at the summary judgment stage or any other, that no inference of discriminatory intent may be drawn"

where the person who hired the plaintiff also fired her. *See Copeland*, 38 F.Supp.2d at 305 (emphasis in original); *See also Salazar v. Ferrara Bros. Bldg. Materials Corp.*, No. 13-CV-3038, 2015 WL 1535698, at *7 (S.D.N.Y. Apr. 6, 2015) (same actor inference "weighs against [plaintiff], but it is only one factor among many and does not negate [plaintiff's] prima facie case."); *Heinemann*, 529 F.Supp.2d 396, 411-412 ("[E]ven if a jury might permissibly draw a same-actor inference in this case, such an inference is not so compelling as to entitle defendants to summary judgment, in the face of plaintiff's evidence of pretext."); *Accord Sklaver v. Casso-Solar Corp.*, No. 02-CV-9928 (WCC), 2004 WL 1381264, at *5-*6, *10 (S.D.N.Y. May 15, 2004); *Brown v. Baldwin Union Free Sch. Dist.*, 603 F.Supp.2d 509, 516-17 (E.D.N.Y. 2009); *Collins v. Connecticut Job Corps*, 684 F.Supp.2d, 232, 250-53 (D.Conn. 2010).

Here, at one moment in time, Padilla directed McLymore to offer the better qualified candidate the position. However, shortly thereafter, with no new facts adduced, he claims to have changed his mind, decided upon an untested structure for managing the library, distorted plaintiff's response to his suggestion, portrayed her as a hostile and angry person, and summarily reversed his decision, now disqualifying her and moving back to the less qualified Caucasian candidate to alone run the library. Indeed, plaintiff was never hired. *Cf. Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (analyzing situations where a person was hired and then a short while later fired by the same actor).

While evaluating plaintiff's opposition to his novel approach to library management, defendant himself took no steps to implement his idea, simply hiring Carolan, admittedly his second choice, as sole director.

In this context, the same actor principle seems quite misapplied because, if anything, defendant devalued the candidate he himself must have considered the better choice for the job

and used her understandable upset at his suddenly new idea against her. In fact, by one of defendant's accounts, he never really offered plaintiff the job and, by the other, he revoked the offer before the Board of Education could ratify it. In the first scenario, it was while racking his brain to decide what to do that he asked McLymore to float his co-director concept. Of course, that is not what actually happened: the documentary evidence shows that Padilla *did* direct McLymore to offer plaintiff the job and the HR Department did complete a personnel change report demonstrating plaintiff's hire – however, this vanished with the Superintendent's change of heart. In this light, given the contradictions in defendant's own account of what he did and when he did it, the same actor principle seems to have no application.

**D. A reasonable jury could reject defendant's other arguments.**

Defendant next invites the Court to engage in fact-finding. He submits that the Court can find credible his disputed assertion that plaintiff "rejected" his idea for co-directors and was argumentative on the phone and that plaintiff told defendant she did not want to work with Carolan. Each of these propositions is disputed and misstated: first, plaintiff has affirmed that she was asked for her opinion by both the defendant and, before him by McLymore, about co-directing the library. Having been asked for her opinion, she provided it: she disfavored the idea and believed it would lead to more trouble than assist. Second, plaintiff disputes that she was "argumentative" during either phone call. She was upset that the rug was being pulled out from under her after McLymore offered her the directorship, which was posted and for which she applied. She explained to him that she had quit her job and begun the relocation process in reliance on his offer. But none of that is the same as being "argumentative," and the court is not positioned to decide whether she so behaved.

16

Likewise, while plaintiff did indicate that she did not feel comfortable working with Carolan as "co-director," she never stated that she could not supervise Carolan, who was then the Assistant Director and had never been given an acting or interim director title. While defendant seeks to distort what plaintiff stated, this is no basis for summary judgment. Carolan had an "established record" in the library, but, again, beyond noting that 18 current employees accused her of causing some to leave because of the toxic environment she had created, and others further removed from the library supported her, the court cannot make any conclusions about that reputation. What is perfectly clear is that plaintiff never stated she could not work "alongside" Carolan. She did express a preference not to serve with Carolan as co-director, but, again, made clear to both McLymore and Padilla that if this were their direction, she would sign on.

Defendant next claims that he was so "excited" about the co-directorship and that plaintiff recognized that. Again, the level of Padilla's interest in this idea is not for the court to resolve: he can make such arguments, but he will be confronted with the fact that he did nothing to actualize this concept after his discussion with the plaintiff. Moreover, as against defendant's repeated claim that plaintiff would not accept this structure, she plainly told both McLymore and Padilla that she would if the Superintendent insisted on it. None of this is inconsistent with her well-grounded belief that relatively small libraries needed one director.

Defendant claims that Dr. Padilla's response to plaintiff's honest expression of disagreement is a legitimate basis to not hire her. This position would be much stronger if Padilla had taken a single step toward actualizing the idea plaintiff opposed. But, in context, it appears that Padilla adopted plaintiff's view of his own idea and simply cast her aside because that is what he wanted to do. And, of course, this gets us back to the issue of Padilla's intent – one the court

cannot determine and one which is determinative of this case. Nor was plaintiff in an employment interview: she already had the advertised position.

More relevant here are those cases which find equal protection violations from deviations from substantive and procedural norms. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977). Here, the school district advertised a civil service position which was vacant and needed to be filled. Plaintiff applied and was deemed best qualified by the decision-maker, but after being offered the position, he allegedly changed his mind and ultimately offered the job to a current employee, who had alienated a substantial share of the library staff.

Employers, including Newburgh, do not ordinarily offer new hires a job only to then pull the offer absent some extraordinary circumstance of new information. Neither of those conditions obtains here. Substantively, this defendant must explain why he would have offered a position of leadership to an assistant director who had alienated a substantial part of the workforce when he had a better qualified candidate available without any such track record.

Defendant next submits that a jury could not find his reasons for rejecting plaintiff false and a shield of race discrimination. But a jury could do so. It could find that plaintiff was a far better qualified candidate for the position, untainted by the serious allegations which Padilla falsely claimed in deposition he asked McLymore to investigate. From this false statement, entirely refuted by McLymore, a jury could find that defendant did not care if his choice further disrupted the library and destabilized its staff, as the employees' petition predicted. A jury could find that a decision-maker concerned with the efficacy of the library and the integrity of the selection process would never act as Padilla did and that his erratic explanations mask discrimination.

A jury could further conclude that Padilla's intoxication with a co-director structure was as short-lived as his commitment to the best qualified candidate and question why plaintiff's

opinions, which he solicited, about this structure were so important in light of his, at best flimsy, attraction to this idea. A jury could find that Padilla adopted this idea after offering, through McLymore, the Director III position to plaintiff, knowing that diminishing her job title before she started would likely cause any job seeker dismay and upset. A reasonable jury could reject defendant's claims that plaintiff refused to abide by the co-director model as she expressly stated the contrary or that her concern about working with Carolan as a co-director would have prevented her from doing so in a professional manner if this were Padilla's decision.

Exaggerating plaintiff's resistance and diminishing without basis her professionalism simply because she honestly reacted to his bird-brained idea may strike a jury as Padilla's means of portraying Ms. Allen as an angry Black woman. A jury could certainly conclude that to the extent Padilla did not hire plaintiff because of her response to his passing thought, that reason was phony and fabricated. *See Pignato v. American Trans. Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994).

Finally, that Padilla claims to have hired some African Americans and recommended others for promotion is without meaning absent far more information on each of these employment decisions, the pool of qualified applicants for each job and, as critically, how Padilla treated those hired. Certainly, this is no basis for grant of summary judgment, and the cases defendant cites are not to the contrary,

This is even more clear here, where the public record includes serious allegations [ultimately settled by the school district] of invidious discrimination and unlawful retaliation against Padilla by one of those he lists, *see Buon*, 65 F.4th 64 (2d Cir. April 12, 2023), and the defendant has presented insufficient information to allow this court to draw any meaningful conclusion on his discriminatory or non-discriminatory treatment of any other person, let alone any group of people.

## CONCLUSION

Plaintiff makes out a *prima facie* case of racial discrimination and a reasonable jury could conclude that defendant engaged in racial discrimination against her and that the reasons he adduced to explain his conduct are pretextual and mask his unlawful intention.

For this reason, his motion should be denied and the matter set down for trial.

Dated:  Goshen, New York
       June 10, 2024

                                         Respectfully submitted,
                                         SUSSMAN & GOLDMAN
                                         *Attorneys for Plaintiff*

                                    By: _____
                                             Michael H. Sussman (3497)
                                           1 Railroad Avenue, Ste. 3
                                         P.O. Box 1005
                                         Goshen, NY 10924
                                         (845) 294-3991 [Tel]
                                         (845) 294-1623 [Fax]
                                         sussman1@sussman.law