HEERDE LAW PLLC
Matthew C. Heerde
New York, NY 10005
Tel: 347-460-3588
Fax: 347-535-3588
mheerde@heerdelaw.com
*Attorneys for defendant Roberto Padilla*

UNITED STATES DISTRICT COURT
SOUTHERN OF NEW YORK

| | |
|---|---|
| TRACY ALLEN,<br><br>      *Plaintiff,*<br><br> vs.<br><br>ROBERTO PADILLA,<br><br>      *Defendant.* | Case No. 7:22-cv-09523-CS |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

I.    THERE IS NO GENUINE DISPUTE THAT DR. PADILLA INITIALLY DECIDED TO RECOMMEND ONLY PLAINTIFF TO THE BOARD OF EDUCATION. ................... 2

II.   THERE IS NO GENUINE DISPUTE THAT DR. PADILLA SOUGHT TO EXPLORE HIS IDEA FOR A CO-DIRECTOR ARRANGEMENT WITH PLAINTIFF AND MS. CAROLAN. ............................................................................... 3

III. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF REJECTED AND DISPARAGED DR. PADILLA'S CO-DIRECTOR IDEA AND WAS RESISTANT TO WORKING WITH MS. CAROLAN. ............................................................................. 5

    A.    Plaintiff Disparaged Dr. Padilla's Idea to Mr. McLymore and Dr. Padilla. .................... 5

    B.    Plaintiff Told Both Mr. McLymore and Dr. Padilla That she Had Reservations About Working With Ms. Carolan. ................................................................. 6

IV. THE COURT MUST REJECT PLAINTIFF'S ATTEMPT TO OVERRIDE DR. PADILLA'S EXECUTIVE DISCRETION. ............................................................................... 7

    A.    The Record Shows Plaintiff was no More Qualified Than Ms. Carolan. ..................... 8

    B.    The Law Entitles Dr. Padilla to Exercise his Executive Discretion. ........................... 8

V.    THERE IS NO EVIDENCE THAT DR. PADILLA'S REASONS FOR NOT RECOMMENDING PLAINTIFF WERE PRETEXT. ........................................................... 9

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Cases

*Byrnie v. Town of Cromwell, Bd. of Educ.*
 243 F.3d 93 (2d Cir. 2001) ................................................................................................ 4

*Davis v. City of New York*
 959 F. Supp. 2d 427 (S.D.N.Y. 2013) ................................................................................ 7

*Delaney v. Bank of Am. Corp.*
 766 F.3d 163 (2d Cir. 2014) .............................................................................................. 9

*Harvey v. Town of Greenwich*
 No. 3:21-CV-771 (KAD), 2023 WL 5894537 (D. Conn. Sept. 11, 2023) ............................... 10

*Reeves v. Sanderson Plumbing Products, Inc.*
 530 U.S. 133 (2000) .......................................................................................................... 10

*Tucker v. New York City*
 376 Fed Appx. 100 (2d Cir. 2010) ..................................................................................... 9

*Wharff v. State Univ. of N.Y.*
 No. 09–4534, 2011 WL 891727 (2d Cir. Mar. 16, 2011) ................................................... 8

# INTRODUCTION

Plaintiff's opposition papers confirm that her single meritless claim of race discrimination must be dismissed. Plaintiff does not dispute that she rejected and disparaged Defendant Padilla's co-director idea to both Mr. McLymore and Dr. Padilla. And Plaintiff does not dispute that she told both Mr. McLymore and Dr. Padilla that she was resistant to working with Mary Lou Carolan, the existing Assistant Library Director and her potential co-director. Plaintiff attempts to downplay her conduct, but the record makes clear that Plaintiff's reaction to Dr. Padilla's co-directorship proposal was quite troubling. Even in her opposition papers, Plaintiff is unable to help herself from *further* disparaging Dr. Padilla's idea to this Court.[1]

Plaintiff acknowledges, as she must, that her conduct constituted legitimate non-discriminatory reasons for Dr. Padilla to decide not to recommend Plaintiff to the Board of Education for Library Director. Plaintiff argues these are pretext, however, and contends that she was "by far the better, more qualified candidate" and that Dr. Padilla could have devised the co-director idea as a ruse to torpedo her candidacy. Neither contention finds evidentiary support in the record, however, and no rational jury could ever find as Plaintiff urges.

The material facts are simple and require judgment in Dr. Padilla's favor. Defendant passed over Plaintiff's candidacy because Plaintiff opposed Defendant's ideas and because Plaintiff opposed working with the existing Library Assistant Director. There is no evidence that Dr. Padilla discriminated against Plaintiff because she is African American. Dr. Padilla's Motion for Summary Judgment must be granted.

---

[1] Plaintiff refers to Dr. Padilla's co-director proposal as "bird-brained". Opposition Memorandum of Law, p. 19.

1

# I. THERE IS NO GENUINE DISPUTE THAT DR. PADILLA INITIALLY DECIDED TO RECOMMEND ONLY PLAINTIFF TO THE BOARD OF EDUCATION.

In a transparent attempt to manufacture a question of fact, Plaintiff asserts that the chronology of Dr. Padilla's decision-making process is in dispute. Plaintiff's responses to Defendant's Statement of Material Facts ("SMF") ¶ 13 and ¶ 17 mischaracterize Dr. Padilla's deposition testimony and seek to confuse the Court, arguing that Dr. Padilla was only racking his brain after reviewing Carolan's and Plaintiff's application materials, and apparently contending that Dr. Padilla had decided to pursue a co-directorship before initially instructing Mr. McLymore to inform Plaintiff she would be recommended to the Board. But Plaintiff fails in her cynical attempt to cloud what is clear and deny what she has repeatedly admitted.

First, it is not inconsistent with his initial decision to pursue only Plaintiff's candidacy for Defendant to also have been torn between the two qualified candidates at the same time. In his testimony cited by Plaintiff, Defendant stated: "I spoke with Mr. McLymore about the good position of having to choose between two qualified candidates and how I was racking my brain trying to make a decision." Sussman Dec. Exhibit 12, 43:16 – 20.[2]

Second, Dr. Padilla's testimony is clear Dr. Padilla first decided to pursue only Plaintiff's candidacy. At page 45 of his deposition, cited by Plaintiff, there was the following colloquy: "Q: Did you authorize Mr. McLymore to offer the position to Ms. Allen? A: I did authorize Mr. McLymore to talk to Ms. Allen as, at that time, she was our leading candidate."

Mr. McLymore testified that Dr. Padilla had instructed him to inform Plaintiff she would be recommended to the Board. SMF ¶ 14. Plaintiff herself admitted in her deposition she

---

[2] Defendant's counsel objected to many of Plaintiff's counsel's questions that Plaintiff cites in response to SMF ¶ 13 and ¶ 17, on the basis that—just like Plaintiff's argument here—those questions were vague, confusing, and compound. See, e.g., Sussman Dec. Ex. 12, 43:3 – 8.

understood Mr. McLymore was conveying Dr. Padilla's desire to pursue her candidacy. SMF ¶ 14. Plaintiff's response to SMF ¶ 14 does not dispute these facts. Response to SMF ¶ 14. Plaintiff has contended all along in this lawsuit that she was initially tapped for recommendation to the Board of Education. Plaintiff's complaint asserts: "After the second, interview, defendant contacted plaintiff and discussed her resume with her. Defendant then offered plaintiff the position of director of the library." Complaint (Doc. # 1) ¶¶ 9, 10. Plaintiff's opposition memorandum admits as much, too: "[Defendant] had before him the qualifications of both candidates when he made the initial decision to offer plaintiff the position." Opp. MOL p. 8.

It is clear that, from two qualified candidates, Defendant first chose to pursue Plaintiff's candidacy only, and instructed Mr. McLymore to convey his choice to Plaintiff, which Mr. McLymore did. Whether Plaintiff was racking his brain before, during, and / or after he initially decided to recommend Plaintiff does not change the material, undisputed fact that he initially decided to recommend Plaintiff.

## II. THERE IS NO GENUINE DISPUTE THAT DR. PADILLA SOUGHT TO EXPLORE HIS IDEA FOR A CO-DIRECTOR ARRANGEMENT WITH PLAINTIFF AND MS. CAROLAN.

Plaintiff also seeks to obscure the clear, material fact that during the selection process, Defendant decided to explore a co-director arrangement with Plaintiff and Ms. Carolan. Plaintiff asserts that Defendant's sincerity in pursuing this arrangement is in question, but there is no evidence to support this. All the evidence available reflects that Dr. Padilla was exploring an "outside-of-the-box" idea and sought to discuss his idea with the two potential co-directors.

As cited in SMF ¶ 17, Mr. McLymore testified that, after he was first instructed to inform Plaintiff of Dr. Padilla's intent to recommend her to the Board of Education, Dr. Padilla then instructed Mr. McLymore to contact Plaintiff again about a potential co-director arrangement.

3

Mr. McLymore testified as follows: "Q. So it sounds like after you spoke to Tracy Allen on the phone the first time, then Dr. Padilla mentioned to you the idea of having a co-directorship. Do I have that right? A. Yes." Heerde Dec. **Exh. A** ("McLymore Depo.") 71:13 – 18. Mr. McLymore further testified as to Dr. Padilla's evolving intent with respect to the Director candidates: "Q. …did Mr. Padilla's intent change with respect to pursuing Ms. Allen's candidacy only? A. Yes, it did. Q. Can you tell us about that, please. A. Yeah, So he said that he wanted – Dr. Padilla said that he wanted – he wanted both – both people because they were highly qualified, and he wants to do something out of the box. And that's where the co-directorship was." Heerde Dec. **Exh. A** McLymore Depo. 70:21 – 71:8.

Plaintiff's own responses to Defendant's SMF further establish Dr. Padilla's plan to explore co-directors was nothing but a sincere attempt to keep top talent in the Library. Plaintiff admits Mr. McLymore called her about the co-director proposal after he initially informed her she would be recommended for the position. See Plaintiff's Responses to SMF ¶ 27 - 31. Plaintiff admits that, after Mr. McLymore called her about the co-director idea, Dr. Padilla called her to discuss the idea as well. Plaintiff's Responses to SMF ¶¶ 32, 33. Plaintiff further admits that Dr. Padilla told her on the phone that he wanted someone who was going to be enthusiastic about the co-directorship. Plaintiff's Responses to SMF ¶ 38.

Dr. Padilla testified in his deposition and declaration that he was aware of a co-leader model in the Newburgh system and elsewhere. SMF ¶¶ 18, 19. Plaintiff's denial of this fact is simply an improper attempt to usurp Dr. Padilla's executive discretion. "[T]he court must respect the employer's unfettered discretion to choose among qualified candidates." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001).

In response to SMF ¶ 23, which states that Dr. Padilla decided to explore the co-director arrangement and propose it to Ms. Carolan and Plaintiff, Plaintiff falsely asserts that Dr. Padilla cited no efforts to explore the arrangement. On the contrary, when questioned by Plaintiff's counsel during his deposition, Dr. Padilla testified that he had proposed the co-director idea in a meeting with the Board of Education's Personnel Committee:

> Q. Were these in-person conversations, on the phone, by e-mail or some other means? A. In committee. Q. What committee? A. Personnel Committee. Q. Is that a Board Committee? A. It is. … Q. What was said at the meeting, to your best recollection, by you? A. I shared an idea about the future of the library that entailed two Co-Directors and this was after the committee had presented the two finalists to me. And I shared the idea of moving from a traditional Director/Assistant Director to two Co-Directors. Sussman Dec. Ex 12, 37:12 – 39:23.

Plaintiff admitted in her deposition that in a phone call, Dr. Padilla explained the differentiation he envisioned between the responsibilities of the two co-directors. SMF ¶ 34 ("He said, well, I have a vision, you would do this part and this person would do that part.")

Dr. Padilla further set forth in his declaration that, even though the Library Director position was not yet set up as a co-director arrangement, he had the means to change that. SMF ¶ 24. Plaintiff's denial of this fact is, again, an improper attempt to second-guess the Superintendent's executive discretion.

### III. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF REJECTED AND DISPARAGED DR. PADILLA'S CO-DIRECTOR IDEA AND WAS RESISTANT TO WORKING WITH MS. CAROLAN.

Plaintiff does not genuinely dispute she told McLymore and Padilla that she did not like Dr. Padilla's idea for co-directors and that she had reservations about working with Ms. Carolan.

#### A. Plaintiff Disparaged Dr. Padilla's Idea to Mr. McLymore and Dr. Padilla.

Plaintiff admits SMF ¶ 28, which states that Plaintiff told Mr. McLymore on the phone that she did not think a co-directorship would work in a Library. Plaintiff does not dispute SMF

5

¶ 31, which states that Mr. McLymore told Dr. Padilla that Plaintiff was not interested in a co-director position. And Plaintiff does not genuinely dispute SMF ¶ 34, which states that she then told Dr. Padilla himself that his idea would not work. In her deposition, Plaintiff made clear she told Dr. Padilla what she thought of his idea, that she thought it would not work, and that she did not like it. (Q. When Mr. Padilla said to you I heard you don't like my idea, was he right? A. Was he right -- yes, he was right. [Allen Depo. 59:11-14].).

Defendant Padilla testified to his conversation with Plaintiff on this topic as follows:

> A. I was trying to get her to understand why I thought this could work and how I thought it was unique and innovative. I expressed to her an idea of how her and the Co-Director could co-exist and elevate and advance the public library. And she expressed multiple times that she was not interested in the idea. She told me she didn't think it was a good idea and she told me that she did not want to work with Carolan. Padilla Depo. 76:14 – 24 (Heerde Dec. **Exh. B**.)

Plaintiff attempts to downplay her negative reaction to Plaintiff's proposal, and asserts that she at some point backpedaled her resistance to the idea. But this was too little too late. As she admits, Plaintiff made clear her resistance to the idea to both Superintendent Dr. Padilla and to Assistant Superintendent for Human Resources Mr. McLymore. Plaintiff admits that Dr. Padilla was very enthusiastic about his idea. Plaintiff Response to SMF ¶ 33. It is unsurprising that in repeatedly disparaging Dr. Padilla's idea, Plaintiff convinced Dr. Padilla he no longer wished to pursue her candidacy.

### B. Plaintiff Told Both Mr. McLymore and Dr. Padilla That she Had Reservations About Working With Ms. Carolan.

In response to SMF ¶ 30, Plaintiff does not dispute that she also told Mr. McLymore that she was resistant to working with Ms. Carolan. And in response to SMF ¶ 34, Plaintiff does not dispute that she also told Dr. Padilla that she was resistant to working with Ms. Carolan. Plaintiff's opposition memorandum confirms as much, twice: "She did express a preference not

6

to serve with Carolan as co-director." Opp. MOL p. 17. "[P]laintiff did indicate that she did not feel comfortable working with Carolan as 'co-director.' " *Id*.

Plaintiff attempts to explain away her reaction to the prospect of working with Mr. Carolan by stating "Plaintiff was knowledgeable about the poor relationships Carolan developed with existing Library staff members and did not believe a co-directorship with her was feasible."[3] No matter how Plaintiff seeks to justify her negative view of Ms. Carolan, it was a risk for Plaintiff to express that view to the Superintendent and Assistant Superintendent before Plaintiff's candidacy was approved by the Board of Education.

In response to SMF ¶¶ 25 and 26, which note Mr. McLymore's and Dr. Padilla's testimony that Mary Lou Carolan told them she, unlike Plaintiff, was amenable to the co-director idea, Plaintiff objects on the grounds of hearsay. This objection is not well-taken. This evidence is offered to show what Carolan said and what Dr. Padilla and Mr. McLymore heard of Carolan's reaction to the co-director proposal. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. Thus, a statement offered to show its effect on the listener is not hearsay." *Davis v. City of New York*, 959 F. Supp. 2d 427, 434 (S.D.N.Y. 2013).

IV. **THE COURT MUST REJECT PLAINTIFF'S ATTEMPT TO OVERRIDE DR. PADILLA'S EXECUTIVE DISCRETION.**

Plaintiff's opposition relies heavily on her assertion that she was "by far the better, more qualified candidate for the position." But the evidence does not support this, and it is not Plaintiff's province to substitute her judgment for Dr. Padilla's executive discretion.

---

[3] Notably, Plaintiff does not explain how she had supposedly became "knowledgeable about" the purported poor relationships.

7

### A. The Record Shows Plaintiff was no More Qualified Than Ms. Carolan.

*First*, the candidates' resumés reveals no superiority in Plaintiff's qualifications. Ms. Carolan served as a director of public libraries for 10 years—several more years than Plaintiff. Plaintiff's resumé indicates she served as director of a Library for four years at the Finkelstein Library, then "Director of Library Experience" in South Carolina for a less than two years, and "Associate Director for Public Service" at Rensselaer Polytechnic Institute for a year. Padilla Dec. **Ex. D**; Allen Dec. ¶ 2; *see also* Padilla's Response to Plaintiff's Counterstatement, ¶ 1.

Both candidates had M.S. degrees in Library and Information Science, and both resumés reflect Advanced Certificates in Public Library Administration. Padilla Dec. **Exs. D**, **E**; *see also* Padilla's Response to Plaintiff's Counterstatement, ¶ 1.

*Second*, as Plaintiff admits, the Personnel Committee recommended *both* Ms. Carolan and Plaintiff *equally* for the Library Director position. Plaintiff's Response to SMF ¶ 12.

*Third*, Ms. Carolan was arguably *more* qualified than Plaintiff, because Ms. Carolan by late 2020 had already also been serving as Assistant Director of the Newburgh Library for another two years, and had, in Dr. Padilla's understanding, been assuming many of the duties of Director as Chuck Thomas stepped into retirement. Padilla Dec. ¶¶ 7, 8, **Ex E**. The law recognizes that a candidate's existing position within the hiring employer is itself a legitimate reason for passing over other candidates. See, e.g., *Wharff v. State Univ. of N.Y.*, No. 09–4534, 2011 WL 891727, at *1 (2d Cir. Mar. 16, 2011).

### B. The Law Entitles Dr. Padilla to Exercise his Executive Discretion.

Plaintiff improperly attempts to dictate how Dr. Padilla should have performed his job as Superintendent, asserting that Dr. Padilla did not sufficiently address a letter from Library employees who expressed dissatisfaction with Ms. Carolan's leadership. But Dr. Padilla

8

acknowledged receiving the Library employees' letter, and Dr. Padilla was entitled to deal with this personnel issue as he saw fit. Courts consistently acknowledge that it is not their role to "sit as a super-personnel department that reexamines an entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014).

V.  **THERE IS NO EVIDENCE THAT DR. PADILLA'S REASONS FOR NOT RECOMMENDING PLAINTIFF WERE PRETEXT.**

Plaintiff cannot overcome the legitimate, non-discriminatory reasons that led to Dr. Padilla ultimately deciding not to recommend Plaintiff to the Board of Education. Plaintiff offers this Court her misguided assertion that she was more qualified than Ms. Carolan and her second-guessing of Dr. Padilla's executive discretion, and argues that Dr. Padilla's idea for co-directors could have been a pretext to cover up Defendant's true, discriminatory intent. But Plaintiff's assessment of her qualifications compared to Ms. Carolan's is off-base, and Plaintiff offers no evidence that Dr. Padilla's co-director plan was anything but genuine. There is nothing in the record that Dr. Padilla's actions were motivated by race.

Two cases are particularly instructive. In *Tucker v. New York City*, 376 Fed Appx. 100, 102 (2d Cir. 2010), the Second Circuit affirmed this Court's dismissing a race discrimination claim on summary judgment, concluding the plaintiff could not demonstrate that the defendant's reason for not hiring plaintiff was pretext. Defendant stated that plaintiff performed poorly during an interview, and the Second Circuit confirmed that "there is nothing unlawful about an employer's basing its hiring decision on subjective criteria such as the impression an individual makes during an interview." *Id*. at 102. Plaintiff tried to defeat summary judgment by pointing out "procedural irregularities" in the hiring process, *id*. at 103, but the Circuit Court recognized those "would be insufficient to raise an inference of discrimination," and held that the plaintiff's argument about discrepancy in qualifications failed. *Id*.

9

In *Harvey v. Town of Greenwich*, No. 3:21-CV-771 (KAD), 2023 WL 5894537 (D. Conn. Sept. 11, 2023), plaintiff, a Caucasian man, asserted a race discrimination claim under Title VII as well as § 1981 based on defendant's decision hire an African American woman over him. Plaintiff made unconvincing arguments that he was more qualified. *Id.* at *5. The court noted that plaintiff "struggled" in his second interview that one of defendant's hiring committee members made a comment about the applicants' race. *Id*. at *5. The court rejected plaintiff's argument that defendant's "failure to follow its own policies" evidenced pretext, which, the Court noted, plaintiff "puts forth only his opinion to support this claim. He offers no evidence which might reveal such an insidious plot such that a fact finder would have to resort to impermissible speculation and conjecture to reach such a conclusion." *Id.* at *6.

Like the plaintiff in *Harvey,* Plaintiff here undertakes "impermissible speculation and conjecture" to posit that Dr. Padilla invented the co-director idea to torpedo Plaintiff's candidacy. And unlike *Harvey*, here there is not even a stray remark about race.[4]

Plaintiff's reliance on *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) is misplaced, because Plaintiff herself has provided the evidence of Dr. Padilla's non-discriminatory reasons and his interest in the co-director arrangement, and Mr. McLymore corroborated all of it. Plaintiff's Response to SMF ¶¶ 28, 29, 30, 31.

## **CONCLUSION**

The Court should therefore grant Dr. Padilla's motion for summary judgment and dismiss Plaintiff's sole claim for discrimination.

---

[4] As noted in SMF ¶ 49, and as she stated in her deposition, Plaintiff had no knowledge of District personnel mentioning race during the hiring process: "Q: Do you have any knowledge of anyone in the Newburgh School District mentioning your race during the hiring process? A: No. I mean, nobody said anything about my race." Heerde Dec. **Exh. C**, Allen Depo. 94:3 – 9. That Plaintiff herself mentioned her race does not evidence discriminatory intent.

Dated: June 25, 2024
       New York, New York

HEERDE LAW PLLC

/s/ Matthew C. Heerde
Matthew C. Heerde, Esq.
48 Wall Street
New York, NY 10005
Tel: 347-460-3588
Fax: 347-535-3588
Email: mheerde@heerdelaw.com
*Attorneys for defendant Roberto Padilla*