UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRACY Y. ALLEN,

                                         Plaintiff,                OPINION & ORDER

            - against -                                          No. 22-CV-9523 (CS)

ROBERTO PADILLA,

                                         Defendant.
------------------------------------------------------------x

<u>Appearances</u>:

Michael H. Sussman
Sussman & Goldman
Goshen, New York
*Counsel for Plaintiff*

Matthew C. Heerde
Heerde Law PLLC
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is Defendant's motion for summary judgment.  (ECF No. 42.)  For the

following reasons, the motion is GRANTED.

## I.    <u>BACKGROUND</u>

### A.    <u>Facts</u>

        The following facts are based on Defendant's Local Civil Rule ("LR") 56.1 Statement,

(ECF No. 44-1 ("D's 56.1 Stmt.")), Plaintiff's responsive LR 56.1 Statement, (ECF No. 48 ("P's

56.1 Resp.")), and the supporting exhibits, and are undisputed except as noted.[1]

---

[1] Plaintiff's LR 56.1 Statement – which includes a "Counterstatement" of facts that
Plaintiff finds helpful but does not contend are in dispute – violates Local Rule 56.1, which
permits only a counterstatement of "additional material facts as to which it is contended that

At the relevant times, Defendant Roberto Padilla was the Superintendent of the

Newburgh Enlarged City School District ("NECSD"). (D's 56.1 Stmt. ¶ 1.) As Superintendent,

Defendant oversaw the administration of the NECSD's schools as well as the Newburgh Free

Library (the "Library"), which is operated by the school district. (*Id.* ¶ 2.) In 2020, the Director

of the Library, Charles Thomas, began to step back from his position. (*Id.* ¶ 5.) In October 2020,

the NECSD announced it would be accepting applications for his replacement in the Director

---

there exists a genuine issue to be tried." LR 56.1(b). "There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute." *Ostreicher v. Chase Bank USA, N.A.*, 19-CV-8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020). I have previously explained this in a case involving Plaintiff's counsel, *see Giurca v. Good Samaritan Hosp.*, No. 19-CV-7761, 2023 WL 254611, at *1 n.1 (S.D.N.Y. Jan. 18, 2023), *aff'd sub nom. Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 302384 (2d Cir. Jan. 26, 2024), *amended*, 2024 WL 763388 (2d Cir. Feb. 26, 2024), and expect him to proceed accordingly in the future. (Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes.)

Further, some of Plaintiff's responses to Defendant's 56.1 Statements merely add facts or dispute only a portion of Defendant's statement, (*e.g.*, P's 56.1 Resp. ¶¶ 1-2, 4, 7), which is insufficient to dispute the entirety of that statement, *see, e.g., Johnson v. City of N.Y.*, No. 15-CV-6915, 2019 WL 294796, at *10 n.8 (S.D.N.Y. Jan. 23, 2019) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012) (improper to "interject[ ] arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Clarendon Nat'l Ins. Co. v. Culley*, No. 11-CV-2629, 2012 WL 1453975, at *2 & n.3 (S.D.N.Y. Apr. 25, 2012) (finding fact undisputed where Plaintiff only disputed a portion of a paragraph). Accordingly, any of Defendant's 56.1 Statements, or any portion thereof, that are properly supported and that Plaintiff does not specifically deny with evidence are deemed admitted for purposes of this motion. *See Universal Calvary Church v. City of N.Y.*, No. 96-CV-4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000).

Finally, some of Plaintiff's 56.1 responses, (*e.g.*, P's 56.1 Resp. ¶¶ 8-9), contain purported denials that do not actually deny or refute the specific facts asserted by Plaintiff, but instead quibble with Defendant's phraseology. In these instances, the Court will deem Defendant's facts admitted where the record evidence supports Defendant's contentions. *See Warren v. Ewanciw*, No. 15-CV-8423, 2019 WL 589488, at *2 n.4 (S.D.N.Y. Feb. 13, 2019).

position. (*Id.* ¶ 8.) In the meantime, Mary Lou Carolan, the Assistant Director of the Library, assumed many of the responsibilities of Library Director. (*Id.* ¶ 6.)

On October 22, 2020, Plaintiff Tracy Allen, an African American woman, applied for the Director position. (*Id.* ¶ 9; ECF No. 45-13 ("McLymore Depo.") at 39:14-40:15; ECF No. 1 ("Compl.") ¶ 1.) Ms. Carolan, who is white, also applied. (D's 56.1 Stmt. ¶ 10; Compl. ¶ 23.) In November 2020, the Library Personnel Committee (the "Committee") interviewed Plaintiff and Ms. Carolan along with other candidates. (D's 56.1 Stmt. ¶ 11.) After Plaintiff's interview, the Assistant Superintendent for Human Resources, Michael McLymore, asked Plaintiff why she had left a previous job in South Carolina, to which Plaintiff responded that she found it difficult to raise her children there due to racial attitudes in the state. (ECF No. 47 ("P's Decl.") ¶ 10.)[2] The Committee then recommended both Plaintiff and Ms. Carolan as finalists for the position. (D's 56.1 Stmt. ¶ 12.) Defendant was ultimately responsible for recommending a candidate to the Board of Education. (*Id.* ¶ 3.) After reviewing Plaintiff's and Ms. Carolan's application materials and interviewing them both, Defendant initially decided to recommend Plaintiff to the Board for the Director position. (*Id.* ¶ 13.)[3]

According to Defendant, he instructed Mr. McLymore to call Plaintiff and inform her that Defendant would be recommending her to the Board. (*Id.* ¶ 14; ECF No. 44-6 ("D's Decl.") ¶¶ 16, 39.) Plaintiff claims that Mr. McLymore informed her that she was being offered the position. (P's Decl. ¶ 4.) Both parties agree that Mr. McLymore informed her that her

---

[2] The record contains no other reference to race.

[3] Plaintiff notes that Defendant's deposition testimony was inconsistent, or at least confusing, as to whether he had initially decided to recommend Plaintiff, (P's 56.1 Resp. ¶ 13), but in reply Defendant makes clear that he agrees with Plaintiff that he did, (ECF No. 49 at 2-3).

recommendation would be put on the agenda for Board approval.  (*Id.*; ECF No. 44-5 ("P's Depo.") at 26:11-16, 32:18-33:5.)  A personnel change report, indicating Plaintiff's salary and start date, was signed by Mr. McLymore on December 10, 2020.  (*See* ECF No. 45-9.)  Plaintiff subsequently quit her job, did not extend her lease, and prepared to move to Newburgh with her family.  (P's Decl. ¶ 4.)

At some point thereafter, Defendant decided to explore the idea of recommending both Plaintiff and Ms. Carolan to be co-directors of the Library.  (D's 56.1 Stmt. ¶¶ 17, 23.)  He broached it with both McLymore and the Committee.  (ECF No. 45-12 ("D's Depo.") at 36:24-40:16.)  According to Defendant, although the position had not been posted or advertised as a co-director position, he felt confident that he could recommend to the Board a modification from a director position to a co-director position.  (D's 56.1 Stmt. ¶ 24.)  Defendant had Mr. McLymore reach out to Ms. Carolan to get her thoughts on a co-directorship, and also spoke with her about the co-directorship himself.  (*Id.* ¶¶ 25-26.)  Ms. Carolan told Defendant that she was open to the arrangement.  (*Id.* ¶ 26.) [4]  Around this time, eighteen Library employees signed a document titled "Vote of No Confidence for Potential Newburgh Free Library Director," which expressed their concerns about the "toxic work environment" at the Library under Ms. Carolan's leadership.  (*See* ECF No. 45-4.)[5]  Defendant was aware of this document but contends that he

---

[4] Although Plaintiff objects to this fact as inadmissible hearsay, I consider it only for its effect on the listener – Defendant – and thus it is not hearsay.  *See, e.g.*, *Davis v. City of N.Y.*, 959 F. Supp. 2d 427, 434 (S.D.N.Y. 2013).

[5] This document is attached to an affirmation of Plaintiff's counsel, (ECF No. 45), but it is not authenticated.  I consider it because Defendant does not appear to dispute its authenticity.  Plaintiff's counsel also attached to his affirmation a newspaper article on which he relies for its truth in Plaintiff's LR 56.1 Statement.  (*See* ECF No. 45-1; P's 56.1 Resp. ¶ 1.)  I find it inconceivable that he did not know that "newspaper articles are inadmissible hearsay and unusable to defeat summary judgment."  *Miles v. City of N.Y.*, No. 99-CV-7365, 2002 WL 31410346, at *4 n.3 (E.D.N.Y. Oct. 24, 2002).  Moreover, the content of the article is so

saw it as "unsurprising bickering while the Library underwent a change in leadership," (D's Decl. ¶ 23), and notes that it was signed by only eighteen of the Library's fifty employees, (ECF No. 49-3 ("D's Reply Decl.") ¶ 3).

Defendant then had Mr. McLymore call Plaintiff to discuss the co-directorship idea. (D's 56.1 Stmt. ¶ 27.) During the call, Plaintiff told Mr. McLymore that she did not think a co-directorship would work at the Library. (*Id.* ¶ 28.) Plaintiff also expressed concern about working as co-director with Ms. Carolan, (*id.* ¶¶ 29-30), who she believed to be "a climber who had alienated many at the [] Library," (P's Decl. ¶ 5). But Plaintiff contends that although she was upset, she told Mr. McLymore that if the co-director idea was a deal-breaker, she would accept that position. (*Id.*)[6] Mr. McLymore then told Defendant about his conversation with Plaintiff, including that she did not want a co-directorship. (D's 56.1 Stmt. ¶ 31.)

Defendant then called Plaintiff himself to discuss the co-directorship idea. (*Id.* ¶ 32.) After Defendant explained his vision, Plaintiff informed Defendant that she did not think a co-directorship would work. (*Id.* ¶¶ 33-34.) Plaintiff also told Defendant that she did not want to work with Ms. Carolan. (*Id.* ¶ 35.) Defendant claims that Plaintiff was "argumentative" during their phone call, (*id.* ¶ 36), which Plaintiff disputes, (P's Decl. ¶ 7).[7] Plaintiff claims that she

---

irrelevant that it appears to have been included only as an improper effort to "dirty up" Defendant.

[6] It does not appear that Mr. McLymore was explicitly asked whether Plaintiff said she would take the co-director position if it was a deal-breaker. He testified that Plaintiff said she was not interested in working with Ms. Carolan and then stated, "So at that point, she - she declined." (McLymore Depo. at 74:4-17.) He did not mention that she ultimately said she would accept the position. He later testified that he does not remember if she said anything else on the phone, other than that she was not interested in a co-directorship and that she did not want to work with Ms. Carolan. (*Id.* at 90:3-25.)

[7] Plaintiff in her declaration does not explicitly deny that she was argumentative, but rather states that she is not an "angry black woman" and that Defendant's claim that she was

again stated that she would accept the co-directorship if Defendant felt strongly, (*id.* ¶ 6), which Defendant disputes, (D's Reply Decl. ¶ 4). During that same call, Defendant informed Plaintiff that he would no longer be pursuing her candidacy. (D's 56.1 Stmt. ¶ 38.) Defendant contends that he decided not to recommend Plaintiff to the Board because "he wanted someone who was going to be enthusiastic about the co-directorship"; Plaintiff did not want to work with Ms. Carolan, who was already in place at the Library; Plaintiff had a "poor attitude" during the conversation; and Ms. Carolan had been performing well as interim Director. (*Id.* ¶ 40.)

In January 2021, Defendant recommended Ms. Carolan to the Board for the Library Director position, and the Board approved her. (*Id.* ¶¶ 41-42.) Although Defendant contends that the Library did not fill the vacant position of Assistant Director in hopes of finding a co-director, (*id.* ¶ 43), the search for a co-director was never opened while Defendant was Superintendent, a position he left in August 2021, (D's Depo. at 79:4-19). Plaintiff ultimately took an inferior position at a library in Middletown, New York. (P's Decl. ¶ 12.)

**B.    Procedural History**

On November 8, 2022, Plaintiff filed her Complaint. (ECF No. 1.) Defendant answered, (ECF No. 33), and the parties engaged in discovery. On March 6, 2024, Defendant filed a pre-motion letter. (ECF No. 40.) Plaintiff responded on March 12, 2024, (ECF No. 41), and on March 20, 2024, the Court held a pre-motion conference. (Minute Entry dated Mar. 20, 2024.) The instant motion followed. (*See* ECF No. 42.)

---

argumentative is "an ironic and stereotypic description." (P's Decl. ¶ 7.) Despite her failure to specifically state that Defendant's claim is false, I interpret her declaration as disputing it.

II.    <u>**LEGAL STANDARD**</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255; *see Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.").  "In considering a motion for summary judgment, the Court cannot render credibility assessments, which are reserved for the jury."  *Jordan v. Gifford*, No. 19-CV-1628, 2022 WL 3106965, at *21 (D. Conn. Aug. 4, 2022).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## III.  <u>DISCUSSION</u>

Plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Defendant violated her right to be free from race discrimination under the Equal Protection Clause of the Fourteenth Amendment. (*See* Compl. ¶ 35.)

"Discrimination claims brought under Section 1983 are evaluated under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973)." *Bellis v. N.Y.C. Dep't of Educ.*, No. 21-CV-3282, 2024 WL 1177232, at *6 (S.D.N.Y. Mar. 19, 2024).  "First, the plaintiff bears the burden of showing a *prima facie* case of discrimination.  In the employment context, that means showing that:  (1) [s]he was a member of a protected class; (2) [s]he was competent to perform the job in question or was performing the duties satisfactorily; (3) [s]he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Id.*  "If the plaintiff meets this initial burden, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action." *Id.*  If the defendant does so, the burden shifts back to the plaintiff to show the stated reason is a pretext for discrimination. *See id.*

Unlike in Title VII cases, however, to meet the third stage of the test under § 1983 a plaintiff must establish that the defendant's discriminatory intent was a "but-for" cause of the adverse employment action. *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019).  Rather than proving that that an "employer's stated non-discriminatory reason was *not the exclusive* reason for the adverse employment action," as would suffice under Title VII, a § 1983 Plaintiff must establish that an "employer's stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action." *Id.* at 214-15 (emphasis in original).  "In other words, a § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action," *id.* at 25, "*and* that discrimination was the real reason," *Bellis*, 2024 WL 1177232, at *6.  "Accordingly, a court considering a § 1983 claim at summary judgment must determine whether, construing the evidence in a light most

favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred 'but-for' [race] discrimination." *Naumovski*, 934 F.3d at 214.

A.    *Prima Facie* **Case**

Defendant argues that Plaintiff cannot establish a *prima facie* case, (ECF No. 43 ("D's Mem.") at 6-10), but "[t]he burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal," *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016); *see M.R. v. Rispole*, No. 22-CV-756, 2025 WL 71657, at *3 (N.D.N.Y. Jan. 10, 2025) (§ 1983 case).

Here, there is no dispute that Plaintiff, who identifies as African American, is a member of a protected class and that she was qualified for the position sought.  (*See, e.g.*, Compl. ¶ 1; D's 56.1 Stmt. ¶ 13.)  It is also undisputed that Plaintiff was ultimately not hired as the Director (or as a co-director) of the Library, (*see* D's 56.1 Stmt. ¶¶ 38, 41-42; P's 56.1 Resp. ¶ 37),[8] which constitutes an adverse employment action.[9]  *See, e.g.*, *Panjwani v. Jet Way Sec. & Investigations, LLC*, No. 13-CV-7186, 2016 WL 3675331, at *7 (E.D.N.Y. Feb. 26, 2016) (well settled that refusal to hire constitutes adverse employment action under Title VII), *report and recommendation adopted*, 2016 WL 3702969 (E.D.N.Y. July 7, 2016); *see also Vega v.*

---

[8] Plaintiff mis-numbers her LR 56.1 Statement, labeling as paragraph 34 her responses to both paragraphs 34 and 35 of Defendant's Statement.  Thus, all her paragraph numbers starting with the second paragraph 34 are one lower than the corresponding numbers in Defendant's Statement.

[9] The parties seem to dispute whether Defendant offered Plaintiff the position of Director (before revoking it), or whether he merely decided to recommend her to the board without giving her a formal offer.  (*Compare* P's Decl. ¶ 4, *with* D's Decl. ¶ 39.)  Regardless of whether Plaintiff was or was not given a formal offer of employment, Plaintiff ultimately suffered an adverse employment action when Defendant decided not to move forward with her candidacy and she was not hired for either the Director or co-director position.  *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (adverse employment action includes failure to hire).  Therefore, to the extent that any such dispute over this issue exists, it is not material.

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (same standards that apply to Title VII claim apply to § 1983 discrimination claim). Accordingly, the only remaining element necessary to establish a *prima facie* case of discrimination is whether the action occurred under circumstances giving rise to an inference of discrimination.

An inference of discrimination arises when an employer replaces the plaintiff with someone outside the plaintiff's protected class. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 312-13 (2d Cir. 2015) (holding, in Title VII and § 1983 case, that inference of discrimination arises when employer replaces plaintiff with someone outside plaintiff's protected class); *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage."); *Rispole*, 2025 WL 71657, at *3 (applying *Zimmermann* to § 1983 case). It is undisputed that Ms. Carolan, who is white, was hired instead of Plaintiff. (*See* D's 56.1 Stmt. ¶¶ 41-42.) Thus, Plaintiff has met her minimal burden of showing an inference of discrimination and making out a *prima facie* case.

### B.      Legitimate Non-Discriminatory Reasons

There is no genuine dispute of fact regarding whether Defendant has articulated a legitimate, nondiscriminatory reason not to recommend Plaintiff for Director. "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis in original). The employer's burden at this stage is "not a particularly steep hurdle." *Nguyen v. Dep't of Corr. and Cmty. Servs.*, 169 F. Supp. 3d 375, 392 (S.D.N.Y. 2016).

Defendant alleges that he did not hire Plaintiff for the Director position because she opposed Defendant's idea for co-directors, was argumentative during their conversation, and told Defendant that she did not want to work with the existing Assistant Director. (*See* D's Decl. ¶ 34.) He also alleges as a non-discriminatory reason that Ms. Carolan had been performing well as interim Director, (*id.*) and that hiring her "would be good for continuity, efficiency and community support," (*id.* ¶ 22).

Courts in this district have found Defendant's alleged nondiscriminatory reasons to be sufficient to satisfy the defendant's burden at the second stage of the *McDonnell Douglas* test. For instance, the impression that one makes on an employer during an interview, which is sufficiently analogous to the phone call between Plaintiff and Defendant at issue here, is a legitimate, nondiscriminatory reason for not hiring a candidate. *See Tucker v. N.Y.C.*, 376 F. App'x 100, 102 (2d Cir. 2010). Similarly, concern about a candidate's ability to work with a team is a valid race-neutral reason for deciding not to hire. *See Coppin v. N.Y.C. Hous. Auth.*, No. 14-CV-7032, 2016 WL 3190253, at *6 (S.D.N.Y. June 7, 2016). Finally, hiring a candidate because she had "previously assumed many of the responsibilities of [the person] they replaced, and had succeeded in [that] new role[] before being recommended for" the position, is a legitimate, non-discriminatory reason for a hiring decision. *Wharff v. State Univ. of N.Y.*, 413 F. App'x 406, 407-08 (2d Cir. 2011). Defendant's stated reasons are thus sufficient to meet his burden at the second stage of the *McDonnell Douglas* framework. Accordingly, the Court focuses on whether the Plaintiff has met her third-stage burden of showing that the non-discriminatory reasons were a pretext for discrimination.

C.    **Pretext for Discrimination**

Plaintiff contends that Defendant's stated non-discriminatory reasons are pretextual. First, Plaintiff argues that Defendant gave contradictory accounts of the decision-making process.  (ECF No. 46 ("P's Opp.") at 6-7.)  Second, she alleges that there is a genuine dispute of material fact as to whether Defendant told Mr. McLymore to investigate the complaint from library staff regarding Ms. Carolan.  (*Id.* at 9.)  Third, she contends that a reasonable jury could conclude that Defendant made up the idea of a co-directorship to move Plaintiff out of the way, because Defendant "took no steps to pursue this idea," and had no details on the structure of the new position or its salary.  (*Id.* at 6.)  Fourth, Plaintiff argues that there is a fact dispute as to whether Plaintiff rejected the structure of co-directors and whether she had a "hostile attitude" on the phone with Defendant.  (*Id.* at 7.)  Finally, Plaintiff argues that a reasonable jury could find that her qualifications were so superior to Ms. Carolan's that, when combined with the other alleged evidence of pretext, a genuine issue of material fact as to Defendant's discriminatory intent arises.  (*Id.* at 11-14.)

First, with respect to Plaintiff's argument that her qualifications were superior to Ms. Carolan's, Plaintiff has not on this basis alone produced enough evidence to show that Defendant's articulated legitimate, nondiscriminatory reasons for failing to hire her were pretextual.

> Even if [plaintiff's] subjective view of [her] own qualifications relative to the other candidates were cognizable (and accurate), that would not be enough to carry [her] burden at the third step of the *McDonnell Douglas* framework.  In the failure to hire context, to raise an inference of discrimination based upon comparative qualifications for a position, the plaintiff's credentials must be *so superior* to the credentials of the person selected for the job that *no reasonable person*, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Bellis*, 2024 WL 1177232, at *7 (emphasis in original); *see White v. Huntington*, No. 14-CV-7370, 2021 WL 826221, at *7 (E.D.N.Y. Mar. 4, 2021).  As Defendant points out, (D's Mem. at

7-8), Ms. Carolan had an additional educational degree that Plaintiff did not have, had been a speaker at numerous librarian conferences, and had won or been nominated for various awards for her work, (*see* ECF No. 44-8). Ms. Carolan also had two more years of library experience than Plaintiff. (ECF No. 44-9.) Plaintiff does not contest these qualifications or contend she also had them, but rather points to her more relevant experience. (P's Opp. at 13.) Plaintiff had been chief librarian at a large library in the Hudson Valley and lead librarian at a large library in South Carolina and at a university, whereas Ms. Carolan had been Director at smaller libraries before becoming Assistant Director at the Library. (P's Decl. ¶¶ 2-3; ECF Nos. 44-7, 44-8.) This discrepancy in the size of their respective employers does not, in light of Ms. Carolan's accolades and experience filling in as Director at the Library, suffice to show that Plaintiff's qualifications were "so superior" as to reveal pretext. *See Lombardo v. Camuto Grp. LLC*, No. 20-CV-10336, 2025 WL 104114, at *9 (S.D.N.Y. Jan. 15, 2025) (plaintiff's experience managing larger enterprise than chosen candidate insufficient to show that reasons for promoting chosen candidate were pretextual); *Jimenez v. City of N.Y.*, 605 F. Supp. 2d 485, 525 (S.D.N.Y. 2009) (plaintiff's credentials not so superior to those of chosen candidate where chosen candidate had experience that plaintiff did not have).

Plaintiff nevertheless raises questions regarding Defendant's alleged non-discriminatory reasons.[10] First, in spite of Defendant's assertion that Plaintiff was not hired because he was looking for someone who was enthusiastic about the idea of co-directors, in the eight months

---

[10] "Even if the qualifications discrepancy is insufficient to create a question of material fact on its own, it retains its probative value and should be considered along with the plaintiff's other evidence of discrimination." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 583 (S.D.N.Y. 2008). I therefore consider Plaintiff's argument regarding qualifications, but find Plaintiff's and Ms. Carolan's credentials to be sufficiently evenly matched that this factor adds little to the calculus.

following Ms. Carolan's hiring, Defendant never hired a co-director or even opened a search for one.  (D's Depo. at 79:4-19.)  A plaintiff may demonstrate pretext by "illuminating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that would raise doubt in the factfinder's mind that the employer did not act for those reasons."  *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 272 (E.D.N.Y. 2013).  Failing to create the position that the employer said it would create can evidence pretext.  *See Signer v. Tuffey*, 66 F. App'x 232, 237 (2d Cir. 2003) (summary order) (jury could find pretext where defendant stated that it wanted to create new position to perform duties it stripped from plaintiff but did not have plaintiff's replacement perform those duties and adjusted job's requirements to match replacement instead).  The inconsistency between Defendant's stated justification and his actions in failing to re-open the search or hire another co-director may demonstrate pretext.

Similarly, although Defendant stated that hiring Ms. Carolan would bring continuity, efficiency, and community support because she already had a record of success while working as an Assistant Director in the organization, (*see* D's Decl. ¶ 22), Plaintiff has provided evidence that Ms. Carolan had caused discord within the Library and was not well-liked by the Library staff, (*see* ECF No. 45-4.)  "The factfinder may disbelieve the defendant's explanation either because the facts underlying the explanation are false or because the explanation is weakened by inconsistencies or logical flaws."  *Williams v. Regus Mgmt Grp., LLC*, 836 F. Supp. 2d 159, 174 (S.D.N.Y. 2011).  Again, a reasonable jury may find it inconsistent for the Defendant to argue that hiring Ms. Carolan would bring such positive benefits to the Library when he was aware of the existing tension that she had apparently caused.

Finally, the parties dispute Plaintiff's demeanor and attitude on the phone call with Defendant about his idea for co-directors. (*Compare* D's Decl. ¶ 31, *with* P's Decl. ¶ 7; *Compare* D's Reply Decl. ¶ 4, *with* P's Decl. ¶ 6.) A court cannot "resolve [] differing versions of . . . events into a coherent whole, because it may not weigh the evidence and determine the truth of the matter." *Jain v. Tokio Marine Mgmt. Inc.*, No. 16-CV-8104, 2018 WL 4636842, at *6 (S.D.N.Y. Sept. 27, 2018). This issue of fact is material, because Defendant relies on Plaintiff's demeanor on this phone call as a non-discriminatory reason for her firing, equating it to a candidate performing poorly in an interview. (*See* D's Mem. at 12; D's Reply Decl. ¶ 4.) Thus, based on the above factors, Plaintiff has shown that a reasonable jury could find pretextual Defendant's stated reasons for deciding not to hire Plaintiff after all.

Nevertheless, even though Plaintiff has raised issues of fact as to whether Defendant's reasons were pretextual, Plaintiff has not shown that those reasons were a pretext for race discrimination and that she would have been hired but for race-based animus. *See Sareen v. Port Auth. of N.Y. and N.J.*, No. 12-CV-2823, 2013 WL 6588435, at *10 (S.D.N.Y. Dec. 16, 2013) (claim fails where plaintiff could not show differential treatment was due to race or national origin), *aff'd*, 592 F. App'x 34 (2d Cir. 2015) (summary order); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 112 (S.D.N.Y. 2009) (defendant entitled to summary judgment because, even if plaintiff had shown defendant's reasons were pretextual, plaintiff had not shown they were pretext for discrimination); *Tucker v. N.Y.C.*, No. 05-CV-2804, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) (granting summary judgment to defendants because, although plaintiff offered evidence that defendant's actions were unusual, he did not offer evidence that defendant's actions were motivated by racial animus), *aff'd*, 376 F. App'x 100 (2d Cir. 2010) (summary order). A plaintiff cannot survive summary judgment on a § 1983 claim only by

showing that the defendant's stated reason was false; rather, Plaintiff must prove "both that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. Here, Plaintiff offers no evidence beyond "conclusory allegations or unsubstantiated speculation" that her race was a factor in Defendant's hiring decision. *Bellis*, 2024 WL 1177232, at *8 (granting summary judgment on § 1983 discrimination claim where plaintiff pointed to no evidence that defendant's reasons were pretexts for race discrimination because none of the documents or emails concerning defendant's decisions reflect that they turned on plaintiff's race).[11]

While there is no *per se* rule that a plaintiff must always show something more than a *prima facie* case and pretext in order to raise an issue of fact as to discrimination, there is also no *per se* rule that showing a *prima facie* case plus pretext is sufficient to survive a summary judgment motion. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). Rather, the decision must be made on a case-by-case examination of the entire record. *Id*. In *Schnabel*, an age discrimination case, summary judgment was appropriate where the plaintiff had "presented no evidence upon which a reasonable trier of fact could base the conclusion that age was a determinative factor in defendants' decision to fire him." *Id*. at 91. The Court noted that there was no evidence that the decisionmakers had discussed the plaintiff's age; plaintiff pointed to no age-related comments or criticisms; the individual who made the decision to let the plaintiff go was the same person who had hired him, which "strongly suggest[ed] that invidious discrimination was unlikely"; and the plaintiff's job was given to someone who had previously held it. *Id*. The same factors are present here: there is no evidence race was discussed as part of

---

[11] Plaintiff's memorandum of law discusses pretext at length, (P's Opp. at 6-19), but makes little effort to show that the pretext was intended to mask race discrimination.

the decisionmaking process; no race-related comments were made; Defendant had initially

decided to hire Plaintiff; and the person ultimately hired was already doing the job.

Plaintiff has not pointed to any evidence that Plaintiff's (or Ms. Carolan's) race was ever

discussed in connection with the hiring decision. *See Shands v. Lakeland Cent. Sch. Dist.*, No.

15-CV-4260, 2018 WL 3315738, at *17 (S.D.N.Y. July 5, 2018) (plaintiff could not point to facts

indicating defendants' decision was motivated even in part by her race where interviewers had

not mentioned race in their notes, candidate's application did not mention race, and interviewers

contended that they did not consider race when choosing another candidate), *aff'd*, 771 F. App'x

121 (2d Cir. 2019); *Marquez v. Hoffman*, No. 18-CV-7315, 2021 WL 1226981, at *14 (S.D.N.Y.

Mar. 31, 2021) (plaintiff did not adequately allege that race was motivating factor in decision to

terminate her employment where no individual defendant was alleged to have mentioned

plaintiff's race). Although Plaintiff mentioned her race to Mr. McLymore, Mr. McLymore was

not certain whether he had shared the comment with Defendant, (*see* McLymore Depo. at

120:18-121:15), and, in any event, mere knowledge of a plaintiff's race does not show an intent

to discriminate, *see Harris v. Allstate Ins. Co.*, 83 F. Supp. 2d 423, 431-32 (S.D.N.Y. 2000)

(granting summary judgment where plaintiff alleged only that defendant was aware of his race

and took adverse action against him); *Felix v. Albert Einstein Healthcare Network*, No. 09-CV-

3750, 2012 WL 525893, at *5 (E.D. Pa. Feb. 17, 2012) ("[M]ere knowledge [of plaintiff's race]

on the part of an employer is insufficient to establish the necessary causal nexus between [her]

membership in a protected class and the decision not to hire [her]."). And Plaintiff has not

provided any evidence of discriminatory comments or similar facts that would show racial

animus on the part of Defendant. *See Piercy v. Fed. Rsrv. Bank of N.Y.*, No. 02-CV-5005, 2004

WL 1871310, at *7 (S.D.N.Y. Aug. 19, 2004) (granting defendants summary judgment because

"[p]laintiffs have put forth no evidence of discriminatory comments, no evidence of actions indicating racial animus, and no statistics" from which a reasonable jury could find pretext was to cover up discrimination), *aff'd*, 144 F. App'x 897 (2d Cir. 2005) (summary order).

Further, the same actor inference undermines Plaintiff's claim for discrimination. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000). Although there may be a dispute as to whether Defendant, through Mr. McLymore, made Plaintiff a formal offer of employment, Defendant at least authorized him to inform her that Defendant had decided to recommend her for the position to the Board. (D's Decl. ¶ 17.) Because Defendant initially decided to recommend her for the position, the same actor inference applies. While Plaintiff is correct that that inference does not preclude a showing of discriminatory intent, in the absence of any evidence put forth by Plaintiff of racial animus on the part of Defendant, the same actor inference weighs more heavily against Plaintiff's evidence of pretext. *See Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) (summary order) (fact that same supervisor hired and fired plaintiff created inference against discriminatory intent absent evidence that supervisor made discriminatory comments); *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559, 2013 WL 6669415, at *8 (S.D.N.Y. Dec. 17, 2013) ("In conjunction with the lack of evidence of any race or national origin-related comments or actions directed at Plaintiff by persons with supervisory or decision-making capacity prior to Plaintiff's termination, the same actor inference solidifies the fact that Plaintiff cannot establish a *prima facie* case for employment discrimination."), *aff'd*, 597 F. App'x 30 (2d Cir. 2015) (summary order). The inference is especially strong here, because the decision to hire and then not to hire were mere weeks apart. *See Cordell v. Verizon*

*Commc'ns, Inc.*, 331 F. App'x 56, 58 (2d Cir. 2009) (summary order) (same actor inference "remains a highly relevant factor in adjudicating a motion for summary judgment," especially "when the firing has occurred only a short time after the hiring").

Additionally, evidence that a Defendant has hired others of the same class to which Plaintiff belongs can support an argument that the adverse employment action was not driven by racial animus. *See Burbank v. Off. of Atty. Gen. of Conn.*, 240 F. Supp. 2d 167, 172 (D. Conn. 2003), *aff'd sub nom. Burbank v. Blumenthal*, 75 F. App'x 857 (2d Cir. 2003) (summary order). Defendant has provided such evidence here, (*see* D's Decl. ¶ 38; ECF No. 44-11), and Plaintiff does not point to any evidence to the contrary.

Finally, that Defendant ultimately hired someone outside Plaintiff's protected class meets a plaintiff's minimal burden to raise an inference of discrimination at the first stage of the *McDonnell Douglas* test, but does not suffice at the third stage. *See David v. Comtech PST Corp.*, No. 03-CV-6480, 2006 WL 2713936, at *10 (E.D.N.Y. Sept. 22, 2006); *see also Lore v. City of Syracuse*, 583 F. Supp. 2d 345, 365 (N.D.N.Y. 2008) ("The plaintiff's burden at the third stage of the *McDonnell Douglas* analysis is substantially higher than the burden at the first stage."), *on reconsideration in part*, No. 00-CV-1833, 2008 WL 5378370 (N.D.N.Y. Dec. 22, 2008).

In short, the record is simply devoid of evidence that Plaintiff's race was considered in any way, let alone played a "decisive role" in Defendant's failure to hire her. *Naumovski*, 934 F.3d at 217.[12] Accordingly, having offered insufficient evidence for a reasonable jury to find that

---

[12] Although the burden at the third stage is Plaintiff's, the record reveals a possible motive for Defendant's decision, other than race, that Defendant's stated reasons may have been intended to cover up: Ms. Carolan, who Plaintiff regarded as a "climber," (P's Decl. ¶ 5), was well-connected. Her application package included reference letters from a State Senator, an aide

discriminatory intent was a but-for cause of Defendant's adverse employment action as required under § 1983, Plaintiff cannot satisfy the third prong of the *McDonnell Douglas* test, and her claim is dismissed.

*    *    *

The Court completely understands why Plaintiff believes she was treated unfairly. Defendant's about-face must have turned her life upside down.  But on this record there is simply no reason to believe that her race had anything to do with it.  *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (plaintiff "has done little more than cite to [her] alleged mistreatment and ask the court to conclude that it must have been related to [her] race."); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015) ("fallacy" for plaintiff to say:  "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class"), *aff'd*, 693 F. App'x 41 (2d Cir. 2017) (summary order); *Rissman v. Chertoff*, No. 08-CV-7352, 2008 WL 5191394, at *4 (S.D.N.Y. Dec. 12, 2008) ("In essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because [of his protected status]".)

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 42), enter judgment for Defendant, and close the case.

---

to a U.S. Representative, and other community leaders, (ECF No. 44-8), and her subordinates' letter of complaint noted her "political connections," (ECF No. 45-4).

**SO ORDERED.**

Dated: February 24, 2025
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.